# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

**HARPREET SINGH,**

               *Petitioner,*

    *v.*

**KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; KEVIN RAYCRAFT, in his official capacity as the Field Office Director of the Detroit Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; RICHARD K. JONES, in his official capacity as Sheriff of Butler County, Ohio Correctional Complex**

               *Respondents.*

Case No.:

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
## PETITION FOR HABEAS CORPUS

1. This is a petition for a writ of habeas corpus filed on behalf of Harpreet Singh ("Petitioner"), a young man with valid Special Immigrant Juvenile ("SIJ") classification who has been confined in immigration custody for over four months without any meaningful opportunity for release (**Exhibit A**). DHS continues to detain Petitioner by misclassifying him as an "applicant for admission," a designation that does not apply to his circumstances and that has been used to deny bond and foreclose custody review altogether. As a result, Petitioner remains detained despite posing no flight risk and no danger to the community.

2. At the time of his apprehension, Petitioner was already granted SIJ status by the U.S. Citizenship and Immigration Services ("USCIS") following the approval of Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant (**Exhibit B**). Congress created the SIJ classification as a humanitarian safeguard for vulnerable youth and expressly exempted SIJ recipients from punitive immigration consequences while they pursue lawful permanent residence. Nonetheless, DHS has detained Petitioner without an individualized custody determination, without any finding of danger or flight risk, and while asserting that no adjudicative body has authority to review his confinement.

3. Petitioner was taken into custody on or about October 10, 2025, following a brief and mistaken association with an acquaintance in Cincinnati, Ohio. He was not charged with, nor convicted of, any criminal offense. Despite the absence of criminal conduct and despite Petitioner's approved humanitarian immigration classification, DHS initiated removal proceedings and has continued to detain Petitioner based solely on an erroneous legal classification. At no point has Petitioner received a meaningful opportunity to challenge the statutory or factual basis for his continued detention.

4. As summarized below, Petitioner's detention is unlawful for multiple independent reasons. DHS lacks statutory authority to detain Petitioner under the provisions it invokes, and its continued confinement of Petitioner exceeds the limits imposed by the Immigration and Nationality Act. DHS has acted in violation of the Administrative Procedure Act ("APA") by engaging in agency action that is ultra vires, arbitrary and capricious, and taken without observance of procedure required by law.

5. DHS has further violated the *Accardi* doctrine by failing to follow its own binding regulations governing custody determinations. In addition, Petitioner's detention violates the procedural and substantive protections of the Fifth Amendment's Due Process Clause and has never been justified by lawful process.

6. Because no adequate administrative remedy exists and because Petitioner remains detained in a procedural and statutory vacuum, habeas corpus is necessary to restore the constitutional and statutory limits on executive detention. Petitioner respectfully requests that this Court grant the writ and order his immediate release, or, at a minimum, order a prompt and constitutionally adequate custody hearing before a neutral decision-maker.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under Art. I, § 9, cl. 2 of the U.S. Constitution (Suspension Clause), 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1651 (All Writs Act), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

8. Federal district courts have jurisdiction to hear habeas claims brought by noncitizens challenging the lawfulness of their detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (recognizing habeas jurisdiction over immigration detention challenges); *Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001) (same); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

9.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (e)(1) because Petitioner is detained within the United States District Court for the Southern District of Ohio and his immediate physical custodian is located within this District. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); *see also United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district which the prisoner is confined.").

10.     No petition for the writ of habeas corpus has previously been filed in any court regarding Petitioner.

**PARTIES**

11.     Petitioner is a native and citizen of India. He entered the United States in September 2024 after traveling through Canada and has remained in the United States since that time. On February 21, 2025, U.S. Citizenship and Immigration Services approved Petitioner's Form I-360 petition granting him SIJ classification, which remains valid and has not been revoked. On October 10, 2025, Petitioner was taken into immigration custody following an interior encounter in Cincinnati, Ohio. He was not charged with, nor convicted of, any criminal offense. Since that date, Petitioner has remained continuously detained by U.S. Immigration and Customs Enforcement ("ICE") and is currently confined at the Butler County Jail in Hamilton, Ohio, within the jurisdiction of this Court.

12.     Respondent Kristi Noem is named in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, she is responsible for overseeing ICE's day-to-day operations, leading approximately 20,000 ICE employees, including

Respondents Lyons and Raycraft. Secretary Noem is the ultimate legal custodian of Mr. Harpreet Singh.

13.     Respondent Todd Lyons is named in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement and as such is a legal custodian of Mr. Harpreet Singh.

14.     Respondent Kevin Raycraft is named in his official capacity as the Field Office Director of Detroit Field Office, U.S. Immigration and Customs Enforcement ("ICE"), DHS. Respondent Kevin Raycraft is a custodial official acting within the boundaries of the judicial district of the United States Court for the Southern District of Ohio. Pursuant to Respondent Kevin Raycraft's orders, Petitioner remains detained.

15.     Respondent Richard K. Jones is the Sheriff of the Butler County, Ohio Correctional Complex in Hamilton, Ohio. He is Petitioner's immediate custodian and resides in the judicial district of the United States Court for the Southern District of Ohio.

## PROCEDURAL AND FACTUAL BACKGROUND

16.     On October 10, 2025, the Department of Homeland Security (DHS) issued a Notice to Appear (NTA), charging Petitioner as removable under INA § 212(a)(6)(A)(i) for presence without admission or parole and INA § 212(a)(7)(A)(i)(I) for lack of valid entry documents (**Exhibit D**). That same day, Petitioner was taken into ICE custody and detained at the Butler County Jail in Ohio. At the time removal proceedings were initiated, Petitioner had already been granted Special Immigrant Juvenile (SIJ) classification by USCIS pursuant to INA § 101(a)(27)(J), rendering him eligible to apply for adjustment of status under INA §§ 245(a) and 245(h) once a visa number becomes available.

004

17.     Petitioner is a native and citizen of India. On October 10, 2025, he was briefly detained by Federal Bureau of Investigation (FBI) officers in Cincinnati, Ohio, due to a mistaken association with an acquaintance's attempted firearm purchase. Petitioner was neither charged nor convicted of any criminal offense. He was subsequently transferred to ICE custody, at which point DHS commenced removal proceedings. As explained in his affidavit, Petitioner was merely a passenger accompanying the acquaintance and had no involvement in the alleged firearm transaction (**Exhibit E**). He further attested that, due to fear and confusion at the time of arrest, he was unable to produce documentation of his approved SIJ status.

18.     USCIS approved the Petitioner's SIJ petition on February 21, 2025, based on findings issued by the Queens County Family Court in New York State. That approval remains valid and has not been revoked. As a result, Petitioner is statutorily eligible to apply for adjustment of status under INA §§ 245(a) and 245(h) once an immigrant visa number becomes available in the applicable preference category.

19.     On October 10, 2025, Petitioner was encountered inside the United States in Cincinnati, Ohio, following a brief detention by federal law enforcement officers related to a mistaken association with another individual. Petitioner was not charged with or convicted of any criminal offense. That same day, the Department of Homeland Security ("DHS") took Petitioner into immigration custody and issued a Notice to Appear charging him as inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).

20.     Petitioner was placed directly into removal proceedings under INA § 240 and was never subjected to expedited removal, credible-fear processing, or Form I-860.

21.     DHS maintains that Petitioner is subject to mandatory detention based on its flawed interpretation of INA § 235(b), in positing that Petitioner is an "applicant for admission", thus, stripping an Immigration Judge's authority to grant bond.

22.     Petitioner sought custody redetermination before the Cleveland Immigration Court pursuant to INA § 236(a). On November 19, 2025, the Immigration Judge denied bond, concluding that the court lacked jurisdiction to conduct a bond hearing based on DHS's classification of Petitioner as an applicant for admission.

23.     Petitioner subsequently filed a motion to reopen bond proceedings and a renewed request for custody redetermination in light of intervening federal litigation challenging DHS's detention policy. On December 10, 2025, the Immigration Judge again denied bond, citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and concluding that the court remained bound by that decision notwithstanding contrary rulings issued by a federal district court. The Immigration Judge denied bond solely on the ground that the court lacked jurisdiction to conduct any custody review, and expressly declined to make individualized findings regarding danger or flight risk. (**Exhibit F**).

24.     Petitioner filed form I-589, Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture ("CAT") ("Form I-589"). On December 29, 2025, the Immigration Judge granted DHS's motion to pretermit the asylum application. On the same date, the Immigration Judge entered an order finding Petitioner removable as charged and ordered him removed to India.

25.     Petitioner timely filed a Notice of Appeal (Form EOIR-26) with the Board of Immigration Appeals ("BIA"), and the required filing fee was accepted on January 5, 2026. The appeal remains pending.

26.     As of the filing of this petition, Petitioner remains detained notwithstanding (1) his approved SIJ classification, (2) the absence of any criminal history, (3) the denial of bond based on asserted lack of jurisdiction rather than individualized findings, and (4) the pendency of his appeal before the BIA. No further administrative mechanism exists by which Petitioner can obtain meaningful review of the legality of his continued detention. Accordingly, this habeas petition is necessary to challenge the statutory and constitutional basis for DHS's ongoing custody.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES AND FUTILITY**

27.     Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, courts may impose a prudential exhaustion requirement in immigration habeas cases. That requirement is excused where administrative remedies are unavailable, inadequate, or futile, or where the petition raises purely legal or constitutional questions beyond the agency's authority to resolve. Each of those exceptions applies here.

28.     First, Petitioner has exhaustively pursued every meaningful administrative remedy available to challenge both the legality of his detention and the continuation of removal proceedings themselves. Prior to seeking bond, Petitioner filed a Motion to Terminate Removal Proceedings before the Immigration Court, asserting that—by virtue of his approved SIJ classification—exclusive jurisdiction over his adjustment of status lies with USCIS and that continued proceedings served no lawful purpose. The Immigration Judge denied that motion, concluding that proceedings should continue notwithstanding Petitioner's SIJ status and the jurisdictional framework governing SIJ-based relief. That denial foreclosed Petitioner's attempt to obtain release through termination of proceedings and compelled him to pursue custody remedies within the same forum.

29.     Second, Petitioner sought custody redetermination through the Immigration Court, requesting release under INA § 236(a). On November 19, 2025, the Immigration Judge denied bond, not based on any individualized findings of flight risk or danger, but on the legal conclusion that the court lacked jurisdiction to conduct a bond hearing because DHS classified Petitioner as an "applicant for admission." After intervening federal litigation undermined the DHS policy relied upon by the Immigration Judge, Petitioner filed a motion to reopen bond proceedings and renewed his request for custody redetermination. On December 10, 2025, the Immigration Judge again denied bond, expressly stating that the court remained bound by Board precedent and lacked authority to grant relief notwithstanding contrary federal court rulings. Once the Immigration Judge disclaimed jurisdiction as a matter of law, no further administrative bond remedy remained available.

30.     Third, the appeal to the BIA does not provide an adequate or effective remedy for Petitioner's detention claims. The Immigration Judge's denial of both termination and bond rested on binding Board precedent and on the court's stated inability to depart from that precedent. Under these circumstances, an appeal to the Board would be futile: the Board lacks authority to invalidate its own precedential decisions, to disregard DHS's asserted detention framework, or to order release where detention is claimed to be mandatory by statute. Where an agency is institutionally incapable of granting the relief sought, exhaustion is not required.

31.     Fourth, administrative remedies are futile because the agency lacks authority to adjudicate the core claims raised in this petition. Petitioner challenges whether DHS has statutory authority to detain him under INA §§ 235(b), 236(a), or 241, and whether his continued detention violates the Due Process Clause. Immigration Judges and the Board cannot decide constitutional questions, cannot declare detention statutes inapplicable as a matter of federal law, and cannot

008

order release where DHS asserts mandatory detention. These issues fall squarely within the jurisdiction of the federal courts.

32. Fifth, continued detention inflicts ongoing and irreparable harm, further excusing exhaustion. Petitioner remains confined despite having no criminal history and despite the absence of any lawful, individualized custody determination. Requiring further administrative steps—after denial of termination, denial of bond, and denial of reopened bond—would serve no practical purpose and would merely prolong detention that Petitioner contends is unlawful.

33. Finally, this petition presents predominantly legal questions, including statutory interpretation and constitutional limits on executive detention, rather than discretionary issues committed to agency expertise. Where a habeas petition raises pure questions of law, exhaustion is not required because agency adjudication would not materially aid judicial review.

34. Accordingly, Petitioner has not only satisfied any prudential exhaustion requirement but has gone beyond what the law requires. No adequate or effective administrative remedy remains available, and further exhaustion would be futile. This Court therefore has jurisdiction to adjudicate the lawfulness of Petitioner's detention under 28 U.S.C. § 2241.

## LEGAL FRAMEWORK

*a. Detention Unlawful Under INA*

35. Immigration detention is lawful only to the extent expressly authorized by statute. For noncitizens in removal proceedings, DHS detention authority arises primarily under INA § 236, 8 U.S.C. § 1226. Section 1226(c) mandates detention for a narrow category of noncitizens with specified criminal convictions, while § 1226(a) governs all other pre-final-order detention and permits release on bond or conditional parole upon an individualized determination. Where detention persists without a realistic prospect of removal and without any individualized custody

009

determination, continued confinement exceeds the scope of INA § 236(a) and violates due process. Where neither provision authorizes continued detention, custody becomes ultra vires and violates due process. Here, Petitioner's detention cannot be sustained under either § 1226(c) or § 1226(a).

36. Section 1226(c) is categorically inapplicable. Petitioner has no criminal convictions and is not charged with any offense that would trigger mandatory detention. DHS does not allege, nor could it establish, that Petitioner falls within the limited classes enumerated in § 1226(c)(1). Accordingly, DHS lacks statutory authority to subject Petitioner to mandatory detention. Any attempt to detain Petitioner under § 1226(c) is therefore unlawful as a matter of statute.

37. Nor can Petitioner's continued detention be justified under § 1226(a). While § 1226(a) permits discretionary detention pending removal proceedings, it presupposes that detention serves a legitimate immigration purpose, namely, facilitating removal or adjudicating removability. That premise collapses where, as here, USCIS possesses exclusive jurisdiction over the only available form of relief, and removal cannot be effectuated in the foreseeable future. The Supreme Court has made clear that immigration detention may not be prolonged or indefinite absent clear congressional authorization. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (detention must bear a "reasonable relation" to its purpose); *Jennings v. Rodriguez*, 583 U.S. 513, 532–33 (2018) (detention statutes must be read according to their text but remain subject to constitutional limits). Where removal is not realistically attainable and proceedings persist solely due to visa backlogs beyond the detainee's control, continued detention exceeds the scope of § 1226(a) and violates due process.

b. *The History of SIJ Status Supports Protecting Petitioner*

38. Congress created Special Immigrant Juvenile Status in 1990 to provide immigration relief for noncitizen children living in the United States, who have been abused, neglected, or

abandoned, or similarly mistreated by one or both parents. The statute set forth specific eligibility criteria, which included being the subject of a state juvenile court judicial determination that it would not be in their best interests to return to their country of origin or country of last habitual residence.

39. Given that a number of these immigrant children had various admissibility issues, including unlawful entry or unlawful presence, in 1991, Congress amended the INA to address this issue by providing that SIJ beneficiaries "shall be deemed, for purposes of [adjustment of status], to have been paroled into the United States," and exempting them from bars to adjustment based on failure to maintain status or unauthorized employment.

40. Congress also explicitly excluded SIJ beneficiaries from specific grounds of excludability, or as they are now known, grounds of inadmissibility. Such actions prevented broad disqualification of SIJ beneficiaries from adjustment of status due to numerous admissibility issues common to SIJ beneficiaries.

41. By creating a pathway for SIJ to adjust status due to being considered paroled, Congress showed that it intended SIJ beneficiaries to receive permanent legal protection, and consequently, that the SIJ process is not complete unless and until an SIJ beneficiary can apply for and be considered for LPR status. This necessarily requires that SIJ beneficiaries be present in the United States, because there is no statutory mechanism that allows SIJ beneficiaries to gain lawful permanent residence other than the filing of a Form I-485 Adjustment of Status Application. SIJ beneficiaries may file that application only when an immigrant visa is immediately available and they are present in the United States.

42. Congress expanded the SIJ program in 1994 to include children whom a court "has legally committed to, or placed under the custody of, a[l] [state] agency or department." This

011

amendment also increased the potential eligibility pool to include not only those in foster care and other court-dependent children, but also children in juvenile facilities. The Immigration Naturalization Service ("INS"), the agency then tasked with administration of the INA, similarly passed regulations that increased eligibility to those individuals who were under the age of 21.

43.     In 2008, Congress unanimously passed the TWPRA, which expressly codified longstanding regulatory policy where SIJ eligibility could come from dependency on a state juvenile court or placement in the custody of an individual or entity appointed by a state of juvenile court. Consistent with academic research that found that children are best served by living with a non-offending relative when compared with those in foster care, Congress included children living in various custody and guardianship arrangements. Eligibility was also now conditioned on the non-viability of reunification with a parent and eliminated language requiring children seeking SIJ status to demonstrate that they were "eligible for long-term foster care".

44.     At the same time, the TVPRA also explicitly exempted SIJ beneficiaries from inadmissibility based on having entered the United States without admission or parole or at an unauthorized time or place, making SIJ beneficiaries eligible to adjust their status even if they had entered the country without inspection or without the necessary travel documents.

45.     To qualify for SIJS, petitioners must be under the age of 21, unmarried, and physically present in the United States. A state court of competent jurisdiction must have issued an order either (1) declaring the petitioner dependent upon the court, or (2) committing the petitioner to the custody of a state agency or department, or placing the petitioner under the custody of an individual or entity appointed by the state or court. Petitioners must also submit to USCIS a predicate state court order making specific findings that (1) it is not viable for the petitioner to reunify with their parent or parents due to abuse, neglect, abandonment, or a similar basis under

state law, and (2) it would not be in the petitioner's best interest to be returned to their or their parent's country of nationality or last habitual residence.

46.     The SIJ statute also authorizes the Secretary of Homeland Security to consent to a grant of SIJ status under 8 U.S.C. 81 101(a)(27)(J)Gii). USCIS exercises this delegated authority to grant cases where the request for SIJ classification is bona fide. In practice. a case is determined to be bona fide if the evidence of record establishes that the state court order was sought primarily to obtain relief from abuse, neglect or abandonment, or a similar basis under state law, and not primarily for the purpose of obtaining lawful immigration status.

47.     The statutory framework lays out certain circumstances where an approved SIJ petition is revoked automatically before USCIS can decide an SIJ beneficiary's permanent residence petition: (1) reunification with one or both parents by virtue of a court order, where the court had previously determined that reunification was not viable due to abuse, neglect, abandonment, or similar basis under state law; or (2) the juvenile court reverses the determination that it would not be in the child's best interests to be returned to their country of origin or of last habitual residence. Where USCIS intends to revoke the grant of SIJ classification, USCIS issues a notice of automatic revocation. After providing notice and an opportunity to respond, then USCIS can revoke the SIJ classification "for good and sufficient cause, for example, a finding of fraud, or a determination that the application was approved in error."

48.     After an SIJ beneficiary's I-360 petition is approved, they are then eligible to adjust their status to lawful permanent residence (LPR) by filing a Form I-485 Adjustment of Status Application. As stated, this form may only be filed when a visa is immediately available. The immigrant visa category under which SIJS beneficiaries may seek to adjust status is the employment-based fourth preference special immigrant category ("EB-4"). Immigrant visa

013

availability for SIS beneficiaries, as for other applicants in the EB-4 category, is subject to annual numerical limits established by Congress.

49. To manage the limited supply of visas, the United States Department of State (the "State Department') issues the Visa Bulletin, a monthly publication that tracks visa availability in each category, based on applicant priority date and country of nationality. The "priority date" is defined as the date when the applicant filed the underlying petition or application-such as the petition for SIJ status. Dates listed in each month's Visa Bulletin are used to determine when a visa is available for issuance to a given applicant, and thus when an applicant may submit an application for adjustment of status.

50. A SIJ beneficiary may adjust status only if the applicant's priority date is earlier than the "final action" date listed in the current month's Visa Bulletin for the EB-4 category for the applicant's country of nationality.

51. Importantly, removal of the SIJ beneficiary from the United States before the adjustment of status is complete strips the SIJ beneficiary of the opportunity to become a lawful permanent resident, because adjustment of status is not available to those not in the United States. There is no process for those outside of the United States to return on an SIJ visa.

   c. *Detention of SIJ Beneficiaries Violates Due Process*

52. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Elridge*, 424 US. 319, 332 (1976). Procedural due process "imposes constraints on government decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth amendment." *Id.*

014

53. Once a petitioner has identified protected liberty or property interest, the Court must determine whether constitutionally sufficient process has been provided. *Id*. In making this determination, the Court balances (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural requirement would entail;" (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id* at 335.

54. Due process protects a noncitizen's liberty interest in the preservation and meaningful adjudication of immigration benefits expressly created by Congress, even where the ultimate relief is discretionary. Where Congress has established a humanitarian pathway that depends upon a noncitizen's continued presence in the United States, the government may not, consistent with due process, undermine that pathway through detention or removal before the process can be meaningfully completed, including during the pendency of administrative appellate review.

55. Petitioner possesses such a protected liberty interest. Prior to the initiation of removal proceedings, U.S. Citizenship and Immigration Services approved Petitioner's Form I-360 Special Immigrant Juvenile ("SIJ") self-petition. That approval remains valid and unrevoked. By virtue of that approval, Petitioner is a member of a congressionally protected humanitarian class for whom Congress created a specific statutory framework leading to eligibility to seek lawful permanent residence when a visa becomes available.

56. Congress structured the SIJ framework to require the beneficiary's physical presence in the United States in order to pursue adjustment of status. See 8 U.S.C. §§ 1101(a)(27)(J), 1255(h). There is no statutory or regulatory mechanism by which an approved SIJ beneficiary may pursue or complete that process from abroad. Removal of Petitioner, whether before or during

015

administrative appellate review, would therefore permanently extinguish the opportunity Congress conferred through SIJ classification.

57.    Petitioner has timely appealed the Immigration Judge's removal order, and that appeal is currently pending before the Board of Immigration Appeals (**Exhibit C**). Notwithstanding the pendency of that appeal and Petitioner's approved SIJ status, Respondents continue to detain him and maintain the threat of removal. Such detention and threatened removal operate to nullify Petitioner's congressionally protected SIJ pathway before administrative review is complete, violating due process and serving no legitimate immigration purpose.

58.    Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo y. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself").

59.    Petitioner is entitled to protections through due process. His interests in his ability to retain and benefit from his pending SIJ self-petition, and upon approval, to remain in the United States and ultimately to receive lawful permanent residence status when a visa becomes available.

### d. SIJ Beneficiaries are Entitled to Protections under the Administrative Procedures Act and the Accardi Doctrine

60.    The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court reviewing agency action "must assess... whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Iolder*, 565 U.S. 42, 53 (2011).

61.     When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes and in areas of the law, such that agencies must follow their own "existing valid regulations," even where government officers have broad discretion, such as in the area of immigration. *United States ex rel. Accardi Shaughnessy*, 347 U.S. 260, 266, 268 (1954) (reversing in immigration case after review of warrant for deportation); *see also Morton vy. Ruiz*, 415 U.S. 199, 235 (1974) ("[I]t is incumbent upon agencies to follow their own procedures . . . even where they] are possibly more rigorous than otherwise would be required."); *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("Accardi has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others.").

62.     Breaches of *Accardi*'s rule constitute violations of both the Fifth Amendment's Due Process Clause and the APA. *See also, Rowe v. United States AG*, 545 Fed.Appx. 888, 890 (11th Cir. 2013) (Recognizing the *Accardi* doctrine holds that to ensure due process an agency is required to follow its own regulations when exercising discretion and issuing a decision) and *Mayers v. United States INS*, 175 F.3d 1289, 1300 (11" Cir, 1999) (Recognizing that a review of statutory questions implicates due process and that Accardi found using habeas to ensure that due process and that the "crucial question" is whether the Attorney General's conducted deprived an individual the rights guaranteed under a statute or regulation.).

   e.   *Detention of SIJ Beneficiaries Remains Improper without a Hearing or Review*

63.     Petitioner was ordered removed on December 29, 2025, and his case is currently pending before the BIA. As such, 8 U.S.C. §1231 does not allow for Petitioner to be released after a bond hearing.

64. Section 1231(a) requires the alien's detention during a 90-day "removal period" after the order becomes final. The statute permits the continued detention of some aliens whose removal cannot be effectuated in the 90-day period (e.g., those who are "unlikely to comply with the order of removal" if released), subject to periodic custody review. Unlike § 1226(a), the statute provides no bond hearings. However, given the "serious constitutional concerns" raised by indefinite detention, the Supreme Court has construed § 1231(a) as having an implicit, temporal limitation of six months after the order of removal if there is no significant likelihood of the alien's removal in the reasonably foreseeable future.

65. In, *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court ruled that post-removal detention under §1231(a)(6) is not indefinite. In that case, after a presumptively reasonable six-month period since a removal order, a detainee can make a prima facie showing that removal is not reasonably foreseeable and the district court must order release.

66. In this case, Petitioner has a pending BIA appeal with no indication of a decision soon. Petitioner has an approved I-360 for SIJ classification, and has no criminal record and his interest in his SIJ classification indicates he will not be a flight risk.

## CLAIMS FOR RELIEF

### COUNT ONE

**CONSTITUTIONAL CLAIM – VIOLATION OF DUE PROCESS OF THE FIFTH AMENDMENT**

67. Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

68. The Supreme Court has long recognized that noncitizens physically present in the United States are entitled to due process protections, regardless of their immigration status.

*Zadvydas*, 533 U.S. at 693 (2001); Mathews v. Diaz, 426 U.S. 67, 77 (1976). Freedom from physical restraint "lies at the heart of liberty that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690.

69.     The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas* 533 U.S. at 690 (2001).

70.     Courts have long recognized that removal implicates substantial liberty interests, such that 'the Due Process Clause protects an alien subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693-94 (2001); see also *Wong Wine v. United States*, 163 U.S. 228, 238 (1896).

71.     First, Petitioner has a fundamental interest in liberty and being free from official restraint.

72.     Second, noncitizens with pending petitions for SIJ classification have fundamental property interest in the adjudication of their petitions. Petitioner certainly has a property interest in his pending Petition.

73.     Third, noncitizens whose petitions for SIJ classification are approved have significant benefits and procedural protections set forth by Congress, including "for cause" protections against the revocation of their classification as SIJ.

74.     Petitioner is awaiting adjudication of his SIJ self-petition by USCIS. He should be considered paroled into the country pending adjudication of his petition, and upon approval, for the purposes of adjustment and should be allowed to remain until his visa is current. 8 U.S.C. §

019

1255(h)(1). However, as physical presence in the United States is a condition of SIJ Status, his eligibility for SIJ Status is nullified if and when he is removed. 8 U.S.C. 1101 (a)(27)(J)(G).

75.     The Petitioner has a liberty interest in remaining in the United States and awaiting adjudication of his petition and subsequent adjustment of status. If removed, the Petitioner will lose his eligibility for SIJ Status and be unable to avail himself of the benefits afforded to SIJ beneficiaries to be safe and to remain in the US for the purposes of adjustment of status to a lawful permanent resident. *See Osorio-Martinez*, 893 F.3d 153 (3d Cir. 2018).

76.     Respondents' continued detention of the Petitioner despite his pending Petition, and BIA appeal violates Petitioner 's right to due process and does not serve the interests of the Respondents. Reason being, Petitioner has no criminal history and has never shown that he is a risk to communities.

77.     Petitioner's detention thus constitutes a deprivation of his fundamental interest in personal liberty and a failure to provide the Petitioner with due process of law.

78.     Petitioner has no adequate remedy, as the Respondents have taken the position that the Petitioner is subject to mandatory detention and that they continue to intend to remove him from the United States, despite his approved SIJ petition, bond redetermination (granted) by the IJ, and termination of his removal proceedings.

79.     For the foregoing reasons, Respondents' detention of the Petitioner violates the rights guaranteed to him by the Due Process Clause of the Fifth Amendment to the United States Constitution.

**COUNT TWO**

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

80.     Petitioner realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 79 above.

81.     Under the Administrative Procedure Act, "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." 5 U.S.C. $704, The reviewing court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." or "unsupported by substantial evidence." 5 U.S.C. §706(2)(A), (E). A court reviewing agency action "must assess whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Encino Motorcars LLC v. Navarro*, 136 8. Ct 2117, 2125 (2016) (quoting *Motor Vehicles Mfrs. Assn of U.S. v. State Farm Mut. Auto. Ins. Co.*, 462 U.S. 29, 43 (1983)); *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

82.     The APA also sets forth rule-making procedures that agencies must follow before adopting substantive rules. See 5 U.S.C. 553. DHS followed these rulemaking procedures to establish TVPRA and VAWA, see 867 Fed. Reg. 4784.

83.     Petitioner 's detention and removal under the facts alleged here constitutes a violation of the APA.

84.     Petitioner 's detention and removal would render him ineligible for adjustment of status as an SIJ beneficiary in violation of the APA, is not in accordance with the law and is an abuse of discretion. 5 U.S.C. §706(2)(A). In order to be statutorily eligible for SIJ Status, the Petitioner must be physically in the U.S. 8 U.S.C. 1101(a)(27)(G). Currently, Petitioner  satisfies

this requirement because he is physically within the borders of the United States, though in immigration detention.

85.     However, if removed, Petitioner will no longer satisfy the physical presence requirement; his eligibility for SIJ status will be nullified and he will not be able to pursue adjustment of status. Therefore, if the Government succeeds in their efforts against Petitioner , they alone will have intentionally stripped Petitioner 's right to engage in an immigration process made available to him, which is an abuse of discretion and not in accordance with the law under 5 U.S.C. §§706(2)(A).

86.     In detaining Petitioner and seeking an order of removal to effectuate, the Government has attempted to strip the Petitioner of his eligibility for SIJ and deferred action status.

87.     The Respondents' actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" 5 U.S.C. 706(2)(C) and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. 706(2)(C).

## COUNT THREE
### VIOLATION OF THE *ACCARDI* DOCTRINE
*(Failure to Follow 8 C.F.R. § 236.23(d))*

88.     Petitioner realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 87 above.

89.     "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). This principle is known as the Accardi doctrine. See *United States Ex Rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004).

90.     The "procedures" that agencies are required to follow include both formal agency regulations and informal operating procedures and guidance. *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990). The Accardi doctrine applies "even where the internal procedures are possibly more rigorous than otherwise would be required." *Alcaraz*, 384 F.3d at 1162 (quoting *Morton*, 415 U.S. at 235).

91.     Respondents' intention to detain and seek removal of a SIJ beneficiary whose petition is approved represents a sudden and unexplained departure from the agency's own guidance and regulations in violation of the Accardi doctrine.

92.     In violating the Accardi doctrine, the Respondents have irreparably injured Petitioner depriving him of relief from removal, depriving him of his liberty, and depriving him of his ability to remain in the United States for the purpose of adjustment and a host of additional protections. *See Osorio-Martinez*, 893 F.3d 153 (3d Cir. 2018).

## COUNT FOUR

## DECLARATORY JUDGMENT

93.     Petitioner realleges and incorporates by reference each and every allegation contained in paragraphs 92 above.

94.     The Declaratory Judgment Act, 28 U.S.C. § 2201, allows the court, "In a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief or could be sought." 28 U.S.C. § 2201 (a).

95.     Petitioner respectfully requests that this Court declare that the process of detention and attempted removal without the adjudication of the Petitioner's pending self-petition for SIJ classification, as applied to Petitioner by Respondents, violates the Due Process Clause of the

Fifth Amendment, the INA, the APA, and federal regulations, and is an unlawful taking of his statutorily authorized benefits without appropriate process, is arbitrary and capricious, an abuse of discretion, and contrary to law.

## COUNT FIVE

## VIOLATION OF SUSPENSION CLAUSE

96.     The Petitioner realleges and incorporates by reference each and every allegation contained in paragraphs above.

97.     The Respondents' detention and attempted removal of Petitioner without any opportunity for meaningful judicial review of the unlawfulness of that removal would violate the Suspension Clause. See *Osorio-Martinez*, 893 F.3d 153 (3d Cir. 2018).

## COUNT SIX
## RELEASE ON BAIL PENDING ADJUDICATION

98.     Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs 1 through 97 above.

99.     This Court has the "inherent authority" to grant bail to habeas petitioners like Mr. Singh. *See Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001) (holding that federal courts have inherent authority to set bail pending the adjudication of a habeas petition when the petition has raised substantial claims and extraordinary circumstances "make the grant of bail necessary to make the habeas remedy effective"). In considering a petitioner's fitness for bail, courts assess (1) "whether the petition raises substantial claims" and (2) "whether extraordinary circumstances exist that make the grant of bail necessary to make the remedy effective." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007).

024

100. This petition raises numerous substantial constitutional and statutory claims challenging Petitioner 's detention. As for the second factor, extraordinary circumstances exist here that make Petitioner eligible for release. Primarily the adjudication of his Petition to allow him to secure legal pathway to permanent residence.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner prays that this Court grant the following relief:

A.  Assume jurisdiction over this matter;

B.  Pursuant to 28 U.S.C. § 2243, issue an order to show cause directing Respondents to file a return within three (3) days absent good cause for a short extension not exceeding twenty days, and set the matter for a prompt hearing

C.  Prohibit Petitioner's removal from the United States and transfer outside the Southern District of Ohio during the pendency of this action;

D.  Declare that Petitioner's arrest and continued detention are unlawful;

E.  Grant the writ of habeas corpus and order Petitioner's immediate release from ICE custody;

F.   In the alternative, conduct an immediate, constitutionally adequate individualized custody determination at which the government bears the burden to justify continued detention and the Court considers release on bond or other reasonable conditions of supervision;

G.   Award Petitioner his costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

H.  Grant such other and further relief as law and justice require.

**Respectfully submitted,**

*/s/ Rajan Kambo*
Kambo Law, PLLC (5892245)
Trial Attorney for Petitioner
366 N. Broadway, Suite 405
Jericho, NY 11753
Phone: (516) 345-4502
Email: raj@kambolaw.com

026

## LIST OF EXHIBITS

A.  ICE Custody Verification....................................................................29

B.  USCIS Form I-360 Approval Notice....................................................31

C.  BIA Appeal Acceptance Notice...........................................................32

D.  Notice to Appear.................................................................................35

E.  Affidavit of Detainee Harpreet Singh.................................................39

F.  IJ Custody Redetermination Order.....................................................40

## CERTIFICATE OF SERVICE

On February 17, 2026, Rajan Kambo, served a copy of the foregoing via PACER's CM/ECF filing system, in which all parties are participating.


/s/ *Rajan Kambo*
Rajan Kambo



**EX. A**

 Official Website of the Department of Homeland Security

Report

Main Menu

> < BACK TO RESULTS

## Facility Page

### Detention Information For:

**HARPREET SINGH**
**Country of Birth:** India
**A-Number:** 201846379

### Current Detention Facility:

BUTLER COUNTY CORRECTIONAL COMPLEX
705 HANOVER STREET
NA
HAMILTON, OH 45011
**Visitor Information:** (513) 785-1191

> MORE INFORMATION >



## ERO Office Information

029

Family members and legal representatives may be able to obtain additional information about this individual's case by contacting this ERO office:

ERO - COLUMBUS, OH SUB-OFFICE
**Phone Number:** (614) 948-4100

BACK TO SEARCH >

# Related Information

## Helpful Info

Status of a Case

About the Detainee Locator

Brochure

ICE ERO Field Offices

ICE Detention Facilities

Privacy Notice

## External Links

Bureau of Prisons Inmate Locator



DHS.gov USA.gov OIG OpenFOIA Metrics No Gov Fear Act Site Map FearMap Policies & Plug-Ins Site Policies

030



Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

**EX. B**

---

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | | Case Type | |
|---|---|---|---|
| MSC2590376637 | | I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT | |
| **Received Date** 02/21/2025 | **Priority Date** 02/21/2025 | **Petitioner** A201 846 379 SINGH, HARPREET | |
| **Notice Date** 07/04/2025 | **Page** 1 of 1 | **Beneficiary** A201 846 379 SINGH, HARPREET | |

| | |
|---|---|
| HARPREET SINGH c/o EAST WEST IMMIGRATIONS 12505 101ST AVENUE FLR 1 S RICHMOND HILL NY 11419 | Notice Type: Approval Notice Class: SL6 Section: Special Immigrant-Juvenile |

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

The above petition has been approved.

The petition indicates that the person the petition is for is in the United States and will apply for adjustment of status. He or she should access the USCIS website at USCIS.gov/i-485 to obtain Form I-485, Application for Permanent Residence. A copy of this notice should be submitted with the application.

If the person for whom you are petitioning decides to apply for a visa outside the United States based on this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

Please read the back of this form carefully for more information.

### THIS NOTICE IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.

**NOTICE:** Although this application/petition has been conditionally approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in the application, petition, and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the Internet, or telephone, and site inspections of businesses and residence. Information obtained during the course of verification will be used to determine whether final approval, revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and the representatives of record will be provided an opportunity to address derogatory information before any formal proceedings is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 648003
Lee's Summit MO 64002
**USCIS Contact Center: www.uscis.gov/contactcenter**



**EX. C**



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

Rai, Manoranjan
Manoranjan Rai, Esq.
P O Box 190905
S Richmond Hill, NY 11419

DHS/ICE Office of Chief Counsel - CLE
925 Keynote Circle, Room 201
Brooklyn Heights, OH 44131

Name:
 SINGH, HARPREET                                    201-846-379

Riders:

Date of Notice:  01/23/2026

**FILING RECEIPT FOR APPEAL OR MOTION**

The Board of Immigration Appeals (Board or BIA) acknowledges receipt of the appeal or motion and fee or fee waiver request (where applicable) on  01/05/2026     , in the above-referenced case, filed by the  Respondent

Additional Comments
 N/A

**WARNING FOR APPEALS:**

**Departure.**  If you leave the United States after filing this appeal but before the Board issues a decision, your appeal may be considered withdrawn and the Immigration Judge's decision will become final as if no appeal had been taken (unless you are an "arriving alien" as defined in the regulations under 8 C.F.R. § 1001.1(q)).

**Proof of posting voluntary departure bond.** If you have been granted voluntary departure by the Immigration Judge, you must submit proof of having posted the voluntary departure bond set by the Immigration Judge to the Board.  Your submission of proof must be provided to the Board within 30 days of filing this appeal.  If you do not timely submit proof to the Board that the voluntary departure bond has been posted, the Board cannot reinstate the period of voluntary departure.  8 C.F.R. § 1240.2(c)(3)(ii).

**Autostay Bond Appeals.**  Please note that the automatic stay will expire 90 days from the date of receipt of the DHS' appeal.  8 C.F.R. § 1003.6(c)(3).  If the Board grants the respondent's request for additional briefing time, then the 90-day automatic stay period will be tolled for the same number of days.  8 C.F.R. § 1003.6(c)(4).

**Form EOIR-27.**  If the appeal was filed by DHS and the respondent/applicant wishes to be represented by an attorney or accredited representative in these new proceedings, counsel must complete a new Form EOIR-27 (Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals). Unless a Form EOIR-27 is received from counsel, the respondent/applicant will be considered pro se before the Board and all future notices, including the Board's decision, will be sent directly to the respondent/applicant and not to counsel.

## WARNING FOR MOTIONS:

**Stay of removal.**  Filing a motion with the Board does not automatically stop the DHS from executing an order of removal.  If the respondent/applicant is in DHS detention and is about to be removed, you may request the Board to stay the removal on an emergency basis.  For more information, call the Clerk's Office at (703) 605-1007.

**Form EOIR-27.**  If the motion was filed by DHS and the respondent/applicant wishes to be represented by an attorney or accredited representative in these new proceedings, counsel must complete a new Form EOIR-27 (Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals).  Unless a Form EOIR-27 is received from counsel, the respondent/applicant will be considered pro se before the Board and all future notices, including the Board's decision, will be sent directly to the respondent/applicant and not to counsel.

**FILING INSTRUCTIONS:**

If you have any questions about how to file something at the Board, please review the Board's Practice Manual which is available on EOIR's website at www.justice.gov/eoir.

Accepted by:   TurnerM

CC

034

**EX. D**

## DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

DOB: 02/22/2004

Event No: CIN2610000124

---

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 400364264          FINS: 1388326051          File No: 201 846 379

In the Matter of:

Respondent: HARPREET SINGH _____ currently residing at:

IN ICE CUSTODY 705 HANOVER ST. HAMILTON, OHIO 45011 _____

| (Number, street, city, state and ZIP code) | (Area code and phone number) |

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of INDIA and a citizen of INDIA;

3. You entered the United States at or near an unknown location, on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer.

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the  See Continuation Page Made a Part Hereof

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

    See Continuation Page Made a Part Hereof

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:          ☐ 8CFR 208.30          ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

801 W SUPERIOR AVE, STE 13-100 CLEVELAND, OHIO 441131829, BUTLER COUNTY SHERIFF'S OFFICE _____
*(Complete Address of Immigration Court, including Room Number, if any)*

on November 10, 2025 at      1:00 pm      to show why you should not be removed from the United States based on the
   *(Date)*              *(Time)*

charge(s) set forth above. _____
                          C6285 NORRIS - SDDO
                          *(Signature and Title of Issuing Officer)*

Date:  October 10, 2025        _____
                               BLUE ASH, OH
                               *(City and State)*

DHS Form I-862 (6/22)                                                Page 1 of 4

035

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

_____
*(Signature and Title of Immigration Officer)*

Date: _____

### Certificate of Service

This Notice To Appear was served on the respondent by me on **October 10, 2025**, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[ ] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **ENGLISH** language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_Refused to Sign_ _____
*(Signature of Respondent if Personally Served)*

_____  M9084 KLAUENBERG - Deportation Officer
*(Signature and Title of officer)*

DHS Form I-862 (6/22)

Page 2 of 4

036

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-soms. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

EOIR – 3 of 4

DHS Form I-862 (6/22)

Page 3 of 4

037

**U.S. Department of Homeland Security**                    **Continuation Page for Form** _I-862_____

| Alien's Name<br>SINGH, HARPREET | File Number<br>201 846 379<br>Event No: CIN2610000124 | Date<br>10/10/2025 |
|---|---|---|

THE SERVICE ALLEGES THAT YOU:
-----------------------------------------------------------------------------------

Immigration and Nationality Act; and/or

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.


ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:
-----------------------------------------------------------------------------------

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature<br>C 6585 NORRIS | Title<br>SDDO |
|---|---|

_____ **4** _____ of ____ **4** ____ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

038

**EX. E**

## AFFIDAVIT

I, **Harpreet Singh (A# 201-846-379)**, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1. On **October 10, 2025**, I was arrested in Cincinnati, Ohio, by the Officers of the Federal Bureau of Investigation (FBI) in connection with an alleged unauthorized gun purchase made by an acquaintance of mine, **Sagar**.

2. On that date, I asked Sagar to give me a ride to Walmart because I needed to buy groceries, and his girlfriend has a car. Sagar was able to ask her for a ride.

3. Before going to Walmart, Sagar stopped at a gun shop with his girlfriend to buy a firearm. I went with them to the shop only because I was in their car. I did not participate in or help with the gun purchase attempt in any way, except for casual conversation about what Sagar preferred.

4. I later learned that the shop owner denied Sagar's purchase application. After that, we all proceeded to Walmart. I purchased my groceries and returned home.

5. Two days after this incident, FBI officers came to my residence and arrested me, alleging that I was also involved in the gun purchase process.

6. At the time of my arrest, I was extremely shocked, nervous, and scared. Because of this, I was unable to properly present evidence of my **approved Special Immigrant Juvenile (SIJ) status** in the United States.

Date: 10|24|2025

.................................

Harpreet Singh

Sworn and signed before me

on this day of ...10|24|2025

.................................

NOTARY PUBLIC

MANORANJAN RAI
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RA0016225
Qualified in Queens County
My Commission Expires 11-12-2027

039

**EX. F**



# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## CLEVELAND IMMIGRATION COURT

Respondent Name:

    SINGH, HARPREET

To:

    KAMBO, RAJAN
    366 North Broadway
    Suite 405
    Jericho, NY 11753

A-Number:
201-846-379
Riders:
In Custody Redetermination Proceedings

Date:
12/10/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

    ☑    Denied, because

On September 5, 2025, the Board issued a precedential decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), which found as a matter of law that all aliens present in the United States without admission may only be subject to detention under INA 235(b), and never under INA 236. Therefore, the Immigration Courts have no jurisdiction over bond proceedings for aliens present in the United States without admission.

On November 20, 2025, the Central District of California granted an order for summary judgment in part in the case of Lazaro Maldonado Bautista et el v. Ernesto Santacruz Jr. et. al., 5:cv-01873, finding the BIA and DHSs' interpretation of sections 235 and 236 of the INA to be unlawful as to the named plaintiffs. The Order denied the plaintiffs' request for a final judgment.

On November 25, 2025, the District Court granted class certification in Bautista v. Santacruz to include "All noncitizens of the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under [INA 236(c)] or [241] at the time the Department of Homeland Security makes and initial custody determination."

In the order certifying the class, the District Court made a part of the order "When considering this determination with the MSJ Order, the Court extends the same

040

declaratory relief granted to Petitioners to the Bond Eligible Class as a whole."

III. Analysis & Findings

The respondent is charged as inadmissible under INA 212(a)(6)(A)(i). The respondent does not dispute his entry without inspection or admission. The question in this case is whether this Court remains bound by the BIA's decision in Matter of Yajure Hurtado or whether the partial order for summary judgment entered by the District Court invalidates the Board's application of INA 235 to all class members.

It is clear from the terms of the class certification that the partial order for summary judgment applies to all class members. See Order Certifying Class, 14. However, where this order is not a final judgment, the order does not yet have binding effect and may be revisited or revised by the Court at any time. Fed. R. Civ. Pro. R. 54(b). Given the order entered by the Central District of California is an order for partial summary judgment, it is not a final judgment and therefore not binding on the parties until a final judgment is entered. E.g. FDIC v. Massingill, 24 F.3d 768 (5th Cir. 1994); see Fed. R. Civ. Pro. R. 54(a) (defining a judgment as "an order from which an appeal lies). An order for partial summary judgment is not a final judgment because it is interlocutory in nature and has no res judicata effect. Id.; Fed. R. Civ. Pro. Rule 54(b); see also Calpetco 1981 v. Marshall Expl., Inc., 989 F.2d 1408, 1414 (5th Cir. 1993) ("Because a partial summary judgment is interlocutory in nature, the district court retains the discretion to revise it; and we review only for abuse of that discretion.")

Accordingly, the Court finds that Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), remains in effect and this Court does not have jurisdiction over these bond proceedings.

☐ Granted. It is ordered that Respondent be:
    ☐ released from custody on his own recognizance.
    ☐ released from custody under bond of $
    ☐ other:

☑ Other:
In the alternative, if it would be found that this Court had jurisdiction to redetermine bond, the Court would set bond at $45,000.  The Court finds that this is the minimum amount necessary to ensure the Respondent's presence at future hearings.

041



Immigration Judge: Riedthaler-Williams, Jennifer 12/10/2025

Appeal:    Department of Homeland Security: ☑ waived   ☐ reserved
           Respondent:                      ☐ waived   ☑ reserved
Appeal Due: 02/09/2026


**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : SINGH, HARPREET | A-Number : 201-846-379

Riders:

Date: 12/11/2025 By: DIAZ, MANJU, Court Staff

042